Argued March 28; reversed April 25, 1944

# JENSEN ET UX. *v.* PROBERT ET AL.

### (148 P. (2d) 248)

Before Bailey, Chief Justice, and Belt, Rossman, Kelly, Lusk and Brand, Associate Justices.

*George A. Rhoten,* of Salem (Rhoten & Rhoten and Sam F. Speerstra, all of Salem, on the brief), for appellants.

*Rollin K. Page,* of Salem (Page & Page, of Salem, and Will H. Masters, of Portland, on the brief for Probert and Hemann; W. C. Winslow, of Salem, on the brief for Vick), for respondents.

BRAND, J.

This is a suit by the plaintiffs, George Jensen and Eline Jensen, husband and wife, to cancel deeds as clouds on the plaintiffs' title to land. The decree of the circuit court cancelled the deeds and decreed that the plaintiff George Jensen is the owner in fee of the premises, but it imposed a lien upon a portion of the same in the sum of $1,500 in favor of the defendant Probert in compensation for the value of the permanent

improvements placed thereon by him. The plaintiffs appeal from that portion of the decree which impressed the lien on plaintiff Jensen's property.

The facts are unique. On February 17, 1926, one Egil Olsen, being then the owner of the property described in the complaint, conveyed it to the plaintiff George Jensen who thereafter, as owner, paid the taxes and assessments against the property.

On January 21, 1941, the defendant George Jensen who enjoyed the same name as the plaintiff George Jensen, being of an enterprising and fraudulent disposition, purported to convey the property by warranty deed to Hollis Vick for $200. The defendant George Jensen had no right, title or interest in the property. The circuit court so held and no appeal has been taken by the defendant George Jensen, or by any other party defendant. It is therefore unnecessary to review the evidence upon that issue except to say that we are in entire accord with the finding of the trial court.

On April 11, 1941, Hollis Vick purported to convey a portion of the property by warranty deed to the defendants Hemann. We shall, for convenience, designate that portion as the "Hemann tract." On April 29, 1941, Hollis Vick purported to convey the balance of the property to the defendant Samuel H. Probert by warranty deed. We shall designate that portion as the "Probert tract." It is properly conceded by the plaintiffs that the defendants Vick, Hemann and Probert acted in entire good faith. There was nothing in the record title to indicate that the George Jensen who deeded to Vick was not the George Jensen who owned the property. Hemann and Probert each took out title insurance policies, insuring to them a fee simple title.

No improvements have been made upon the Hemann tract and the cloud upon the plaintiff's title by reason of the respective deeds was properly removed by decree of the trial court. The plaintiff George Jensen is the owner in fee of that tract. The defendant Probert in good faith constructed a small house upon the Probert tract. As to that tract also, the court cancelled the deeds as clouds on the title of plaintiff Jensen, but the decree provided further:

> "* * * that there be and there is hereby impressed a lien on the premises hereinafter described as the Probert Lien tract in the sum of ONE THOUSAND FIVE HUNDRED AND NO/100 ($1,500.00) DOLLARS; said lien being in favor of defendant Samuel H. Probert and being in compensation for the value of the permanent improvements placed on said Probert Lien Tract by defendant Probert, and said sum is hereby fixed as the net value of such improvements after deducting from the whole value thereof the value of the use and occupancy of the said Probert Lien Tract for the period during which defendant Samuel H. Probert has been in possession thereof."

The plaintiffs Jensen had no knowledge of the fraudulent conduct of the defendant Jensen, nor of the existence of any of the deeds to Vick, Hemann or Probert. It does appear that in 1939 the plaintiffs were informed by a third party that another George Jensen had claimed to be the owner of the property. The defendant Jensen never took possession of the property and apparently was only upon it on two or three occasions. On the last occasion, in the fall of 1939, he told Mrs. Lentz, who lived on the adjoining property, that he owned the property, but admitted that he had no deed. Mrs. Lentz advised that he had the wrong prop-

erty—"the wrong lot or wrong block number." Mrs. Lentz never saw him again until the day of the trial.

The plaintiffs resided in Port Alexander, Alaska, and only occasionally visited in Salem at the home of Mrs. Jensen's father, Egil Olsen. They had no knowledge that anyone had taken possession of the property, or that any improvements had been made thereon until September, 1941, when the plaintiff Eline Jensen returned from Alaska and discovered that Probert had constructed a small house on plaintiff's land. She promptly consulted an attorney and thereupon this suit was brought to remove the cloud from plaintiff's title.

BRAND, J.   The question for our decision is this: The plaintiff Jensen was and is the owner in fee of the Probert tract. The plaintiffs were neither guilty of negligence, fraud, or bad faith nor did they take any affirmative action tending to mislead Probert or his purported predecessors in title. Probert, acting in good faith and without negligence and reasonably believing himself to be the owner of the Probert tract, built thereon a small house. Did the court err in imposing a lien on the plaintiff's land for the sum of $1,500?

Concerning the pleadings, it should be added that the plaintiffs were not in possession of the Probert tract at the time their complaint was filed. In their complaint, however, they at least attempted to invoke the aid of equity and prayed for such other further and different relief as to the court may seem just and equitable.   The defendant Probert in his answer also sought the aid of equity and after setting forth the facts concerning the transaction and claiming title, he prayed for a decree that if the court should find that he was not the owner of the Probert tract, he be given a decree impressing a lien upon the property for the full amount

of the value of the improvements and for the foreclosure of such lien. Without objection by either party, the case was tried as a suit in equity.

■ By the early English and American common law, the true owner might recover his land in ejectment without incurring any liability to pay for improvements by an occupier, even though the latter acted in good faith believing himself to be the owner. 2 Kent's Comm. (10th ed.) 418; *Parsons v. Moses,* 16 Iowa 440 (by Dillon, J.) ; *Anderson v. Reid,* 14 App. D. C. 54, at p. 69. But as early as 1829 it was held that equity, borrowing from the civil law, would under some circumstances soften the harsh rule of the common law by allowing compensation by an occupier who in good faith improves land believing it to be his own. *Bell's Heirs v. Barnet,* 25 Ky. 516 (2 J. J. Marsh).

■ In the case of *Putnam v. Ritchie,* (1838) 6 Paige, N. Y., Ch. 390, Mr. Chancellor Walworth commented upon the rule of the civil law, but held that he was "not authorized to introduce a new principle into the law of this court without the sanction of the legislature." The court therefore declined to impose a lien upon the legal title for the benefit of the bona fide possessor who in good faith had made beneficial improvements. In that case, however, the owners by bringing ejectment had stood upon their strict legal rights, the issue having been raised only by a cross-bill in equity filed by the occupant. Since the owners had not invoked equity, it was impossible for the court to apply the maxim that he who seeks equity must do equity.

> "The classical rule is in accord with the still existing weight of authority that aside from a statute and except where the complainant seeks equitable assistance, no restitution is permitted

either in law or in equity because of services which are beneficial to the land or structures of another who does not know of such services. * * *'' Notes on Restatement, Restitution, (American Law Institute) p. 29, § 42; *Armstrong v. Ashley,* 204 U. S. 272 at p. 285, 27 S. Ct. 270, 51 L. Ed. 482; *Anderson v. Reid,* supra; *Williams v. Gibbs,* 20 How. 535, 15 L. Ed. 1013; *Folts v. Alford,* 102 Ark. 191, 143 S. W. 905; *Dudley v. Johnson,* 102 Ga. 1, 29 S. E. 50; *Parsons v. Moses,* supra.

■ On the other hand, it is firmly established by the weight of authority that where the occupant in good faith believes himself to be the owner and makes improvements which enhance the value of the property and where the true owner seeks relief in a court of equity, the equitable maxim will apply and the court will grant relief to the owner only upon condition that appropriate restitution is made to the occupier. 2 Tiffany, Real Property (3d ed.) § 625; 4 Pomeroy's Eq. Jur. (5th ed.) p. 713, § 1241; Notes on Restatement, Restitution, p. 31, § 42; *Anderson v. Reid,* supra; *Parsons v. Moses,* supra.

■ The influence of equity has also somewhat modified the rights of the true owner even in actions at law. If in addition to seeking ejectment, the owner adds a count for *mesne* profits, it has been held even in the absence of statute that the value of improvements made in good faith may be set off against a claim for *mesne* profits. The reason given is that the action for *mesne* profits is regarded as the application of the equitable action of assumpsit. 2 Tiffany, Real Property (3d ed.) p. 623, § 625; *Wakefield v. Van Tassell,* 218 Ill. 572, 75 N. E. 1058; *Parsons v. Moses,* supra; *Putnam v. Tyler,* 117 Pa. 570, 12 A. 43; *Ford v. Holton,* 5 Cal. 319; *Fricke v. Safe Deposit and Trust Co.,* 183 Pa. 271, 38 A. 601.

A more extreme doctrine favoring the occupant has been approved in a few states which have followed the reasoning of Justice Story in the famous case of *Bright v. Boyd,* 1 Story's Reports 478, 4 Fed. Cas. 127, Case No. 1875, and 2 Story's Reports 605, 4 Fed. Cas. 134, Case No. 1876. That was an independent suit in equity brought by an occupier against the true owner to recover compensation for permanent and valuable improvements made in good faith by one who had no notice of any defect in his title. After observing that where an owner seeks to recover rents and profits, equity will allow the possessor to deduct therefrom the full amount of improvements, based on the equitable maxim, the court by Story, J. said:

"* * * But it has been supposed, that Courts of equity do not, and ought not to go further, and to grant active relief in favor of such a bona fide possessor, making permanent meliorations and improvements, by sustaining a bill, brought by him therefor, against the true owner, after he has recovered the premises at law. I find, that Mr. Chancellor Walworth, in Putnam v. Ritchie (6 Paige R. 390, 403, 404, 405), entertained this opinion, admitting at the same time, that he could find no case in England or America, where the point had been expressed or decided either way. Now, if there be no authority against the doctrine, I confess, that I should be most reluctant to be the first judge to lead to such a decision. It appears to me, speaking with all deference to other opinions, that the denial of all compensation to such a bona fide purchaser, in such a case, where he has manifestly added to the permanent value of an estate by his meliorations and improvements, without the slightest suspicion of any infirmity in his own title, is contrary to the first principles of equity. Take the case of a vacant lot in a city, where a bona fide purchaser builds a

house thereon, enhancing the value of the estate to ten times the original value of the land, under a title apparently perfect and complete; is it reasonable or just, that in such a case, the true owner should recover and possess the whole, without any compensation whatever to the bona fide purchaser? To me it seems manifestly unjust and inequitable, thus to appropriate to one man the property and money of another, who is in no default? The argument, I am aware, is, that the moment the house is built, it belongs to the owner of the land by mere operation of law; and that he may certainly possess and enjoy his own. But this is merely stating the technical rule of law, by which the true owner seeks to hold, what, in a just sense, he never had the slightest title to, that is, the house. It is not answering the objection; but merely and dryly stating, that the law so holds. But, then, admitting this to be so, does it not furnish a strong ground why equity should interpose, and grant relief?''

In a later stage of the same litigation, the court said:

''* * * I wish, in coming to this conclusion, to be distinctly understood as affirming and maintaining the broad doctrine, as a doctrine of equity, that, so far as an innocent purchaser for a valuable consideration, without notice of any infirmity in his title, has, by his improvements and meliorations, added to the permanent value of the estate, he is entitled to a full remuneration, and that such increase of value is a lien and charge on the estate, which the *absolute owner is bound to discharge*, before he is to be restored to his original rights in the land. This is the clear result of the Roman law; and it has the most persuasive equity, and, I may add, common sense and common justice, for its foundation. * * *''

It will be observed that *Bright v. Boyd* did not depend upon the maxim that he who seeks equity must do equity for the owner did not invoke the aid of equity.

The decision constituted a deliberate extension of equitable jurisdiction. The court refused to apply the principle that equity follows the law (see *Anderson v. Reid,* supra) and asserted the right of the occupier to secure restitution by an independent suit. The rule of *Bright v. Boyd* is followed and approved in *Hardy v. Burroughs,* 251 Mich. 578, 232 N. W. 200, where the court said:

> "The better reasoning is that plaintiffs may maintain this bill. It is not equitable on the facts here before us that defendants profit by plaintiffs' innocent mistake, that defendants take all and plaintiffs nothing. The fact that defendants need no relief and therefore seek none ought not to bar plaintiffs' right to relief in equity. * * *"

Other cases supporting the doctrine of *Bright v. Boyd* are as follows: *Schleicher v. Schleicher,* 120 Conn. 528, 182 A. 162, 104 A. L. R. 572; *Herring v. Pollard's Executors,* 23 Tenn. 362; *Soper v. Foster,* 256 Ky. 157, 75 S. W. (2d) 1080; *Murphy v. Benson,* 245 S. W. 249 (Texas); *Union Hall Association v. Morrison,* 39 Md. 281. See also 104 A. L. R. 577, note.

■ With this background, we will consider the Oregon cases which are relevant to the subject. The leading case in this state is *Hatcher v. Briggs* (1876), 6 Or. 31. Briggs and others were owners of land. Proceedings were instituted for its partition and ultimately under those proceedings the property was sold to Hatcher, the plaintiff. The sale was confirmed by the county court and deed issued. The entire proceedings were void by reason of want of jurisdiction in the county court. The purchaser had secured legal advice, inspected the record "which disclosed no defect in form," and acting in good faith had made permanent

improvements. There was evidence of inequitable conduct by the owner which would of itself have justified the interposition of equity for the protection of the purchaser, but the court said:

"We have no doubt that the decision in this case might well rest upon the doctrine of ratification, but we prefer to place it upon broader grounds, and to settle as far as this state is concerned, a more important question, properly presented by the record. Though, of course, in considering the general equities of the case, we shall not fail to bear in mind the testimony relating to the acts and to the knowledge of the respondent."

The issues were raised in the following manner. Briggs, the owner, brought an action for ejectment and for damages on account of wrongful detention. Hatcher filed a cross-bill in equity, seeking first a decree that he was the owner, or in the alternative, that the improvements made and taxes paid by him be decreed to be a lien on the property of Briggs, if it was held to be Briggs' property. This court reviewed *Bell's Heirs v. Barnet,* supra; *Putnam v. Ritchie,* supra; *Union Hall v. Morrison,* supra; and *Bright v. Boyd,* supra. The court then said:

"After mature deliberation, we too have concluded to follow the principles announced in Bright v. Boyd, and the other cases sustaining the same views as more in consonance with equity and justice than the decisions in Putnam v. Ritchie.

"It follows that Hatcher having purchased the land in good faith, and having good reason to regard himself as the owner thereof at the time he erected the improvements thereon, should not be ejected therefrom without compensation for those improvements.

"As regards the purchase price paid by Hatcher for the land, there is no doubt that it was its full

value. Neither is there any doubt that Briggs received his full share and proportion thereof from his guardian. We can perceive no equity in permitting him *to retain his share of the purchase price, and also to recover the land.* Therefore, in addition to the value of the improvements Hatcher should have his purchase-money and the taxes upon the land, and the improvements should also be refunded to him. (Italics ours.)

"We further think that an equitable adjustment of the case demands that Hatcher should account to Briggs for his proportion of the rental value of the premises in controversy, excluding the use of the permanent improvements during the entire time he has been in possession of the land. We do not think section 318 of the code restricts the power of a court of equity in a suit of this character."

Oregon was thus deliberately placed in the minority column with the cases which follow *Bright v. Boyd.*

*Hatcher v. Briggs* was discussed and distinguished in *Parker v. Daly,* 58 Or. 564, 114 P. 926, 115 P. 723, 34 L. R. A. (N. S.) 545. In that case, property of Daly was sold for delinquent taxes and Parker acquired the property under the tax sale. The owner brought ejectment. The occupant claimed title under the tax sale and upon adverse possession and "for the purpose of recovering the value of improvements made in case his title fails, brings this suit as a cross-bill," alleging inadequacy of legal remedy, long possession and $2,500 of improvements enhancing the value of the property. The lower court found that the occupant had no title, but that he had in good faith enhanced the value of the property. A lien was therefore imposed upon the owner's land to the amount of the enhancement. This court reversed. The grounds of the opinion are not altogether clear, but the

court cited with apparent approval from 4 Pomeroy's
Eq. Jud. (5th ed.), p. 715, § 1241, as follows:

"* * * either the aid of a court of equity must
be requisite on behalf of the owner against whom the
claim for reimbursement is made, so that he can be
compelled to do equity or else there must be some
element of fraud in the transaction as ground of
equitable interference. * * *"

Again, the court said:

"* * * While in Oregon we have no such statute
except in recognition of the common-law rule, yet
the equitable remedy is available either where the
owner has been compelled to resort to equity for re-
lief or where the purchaser has been ousted at law;
and where the purchaser, for a valuable consider-
ation, without notice of any infirmity of his title,
has made improvements, he may place the amount
that such improvements have added to the value of
the premises against any claim for rents and profits,
and, if there was any negligence or bad faith on the
part of the owner in relation to the tax or the making
of the improvements, the purchaser may recover
the value thereof in excess of the rents and profits."

The court distinguishes *Hatcher v. Briggs* and
*Bright v. Boyd* by pointing out that in each case the
owners of the property received full value therefor out
of the proceeds of the void sale and therefore could not
in equity retain also the land and improvements without
compensating the occupier. It must be conceded that
*Hatcher v. Briggs* is to be distinguished from the case
at bar upon the same grounds, but we think a careful
study of the Hatcher case will show that the decision
did not rest solely upon the fact that the owner had
received proceeds from the void sale. *Parker v. Daly*
is to be distinguished from the case at bar in that Daly,
the owner, brought ejectment and did not thereby

invoke the aid of equity. The maxim would not, therefore, apply. *Parker v. Daly* may not support the broad equitable principles of *Hatcher v. Briggs* and *Bright v. Boyd,* but it is consistent with the great weight of authority, supra, to the effect that when the owner invokes equity, he must do equity to the occupier as a condition of relief. To the same effect see *Kieffer v. Victor Land Company,* 53 Or. 174, 90 P. 582, 98 P. 877.

By way of summary, we quote from Restatement, Restitution, p. 167, § 42, as follows:

"Except to the extent that the rule is changed by statute, a person who, in the mistaken belief that he or a third person on whose account he acts is the owner, has caused improvements to be made upon the land of another, is not thereby entitled to restitution from the owner for the value of such improvements; but if his mistake was reasonable, the owner is entitled to obtain judgment in an equitable proceeding or in an action of trespass or other action for the mesne profits only on condition that he makes restitution to the extent that the land has been increased in value by such improvements, or for the value of the labor and materials employed in making such improvements, whichever is least."

And from p. 170, illustrations 1 and 3, as follows:

"1. In a jurisdiction in which there is no statute with reference thereto, A, in possession of and mistakenly believing that he owns Blackacre, builds a house thereon. A is not thereby entitled to restitution from B, the owner.

\*          \*          \*          \*          \*

"3. Same facts as in Illustration 1, except that B gains possession of the land and brings a bill to remove the cloud on title created by A's occupancy. B is entitled to relief only upon paying A the reasonable value of the improvements."

■■ The doctrine of *Hatcher v. Briggs* appears to go beyond the rule as set forth in the Restatement in that the Hatcher case would permit restitution to the occupier in cases where the equitable maxim that he who seeks equity must do equity does not apply. While we have no inclination to weaken the authority of that case, we think it is unnecessary to apply it in the case at bar. Here jurisdiction of equity was invoked by the owner. If it be urged that equity was without jurisdiction to remove a cloud because the tract was in the actual possession of the defendant Probert at the time suit was brought (*O'Hara v. Parker,* 27 Or. 156, 39 P. 1004; *National Surety Corporation v. Smith,* 168 Or. 265 and 266, 114 P. (2d) 118, 123 P. (2d) 203), the answer is that defendants, by also seeking equitable relief, waived any objection to the jurisdiction of the chancellor and conferred jurisdiction upon the court to render complete, equitable relief. *Oldenburg v. Claggett,* 142 Or. 238, 20 P. (2d) 234; *Carroll v. McLaren,* 60 Or. 233, 118 P. 1034; *O'Hara v. Parker,* supra.

The case, therefore, falls within the majority rule and the plaintiff, if he is to receive the aid of equity in removing the cloud from his title, must make suitable restitution to the defendant on account of improvements made. The only remaining question relates to the character of restitution or compensation which should be granted the defendant Probert in view of the particular facts of the instant case.

■■ We find that the imposition by the trial court of a lien of $1,500 against the property of the plaintiff was within the power of the court, but the plaintiff having acted in entire good faith and having been guilty of no negligence or inequitable conduct, stands

before equity in as fair a light as does the defendant Probert. We do not know whether the plaintiff could redeem his property from foreclosure on such a lien. If a lien is to be imposed, we would be disposed to follow the procedure adopted in *Union Hall Association v. Morrison,* supra. In that case the decree provided that the owner should have the option to receive from the occupier payment for the lot at its just value without improvements, the owner to convey the lot to the purchaser, or the owner could hold the lot with the improvements and pay the purchaser the actual value of such improvements. Such a procedure was approved by Chancellor Walworth in *Putnam v. Ritchie,* supra, and in *Hardy v. Burroughs,* supra.

There is another type of restitution which we think more equitable under the facts of the present case. The house constructed by defendant Probert is small and without a basement, the ground being excavated only to the depth of two feet thereunder. We may judicially know that such a building is susceptible to removal without serious difficulty. While we have found that the defendant Probert was free from fault or negligence, the fact remains that he made no investigation concerning the title, but on the contrary, relied upon a policy of title insurance in the sum of $1,500 and upon the warranty deed of his vendor.

This is not a case in which an occupier seeks the right to remove a permanent structure over the protest of the true owner on whose land it was built. The distinction is clear. The plaintiffs herein make no claim of ownership in the building erected by Probert. On the contrary, they assert that they desire its removal. The defendants Probert cite *Trunnell v. Tonole,* 104 Or.

628, 208 P. 583, and in their brief they agree that the right to remove the improvements would be clear if they were affirmatively seeking such a remedy. Defendants' objection is that the plaintiffs have no right to force the defendant Probert to elect that remedy when he prefers the remedy of a lien as imposed by the trial court. This court has held by way of dictum that equity has power to permit or require the removal from the true owner's land of buildings erected by mistake and in good faith by an occupier and, under the peculiar circumstances of this case, we approve of that dictum. *Trunnell v. Tonole*, supra.

■ Equity is not bound by the harsh rule of the common law which would give the improvements to the owner without any right of reimbursement to the occupier. But neither is it bound by any rule of thumb as to the manner in which restitution should be made. If we direct the removal of the building, the rights of the plaintiff will be restored, the defendant will be relieved from the harsh rule of the common law which would forfeit his improvements, and he can still pursue such contractual remedy as he may have on his policy of title insurance or he can sue for breach of covenants of warranty in the deed from Vick.

The equities of the plaintiff Jensen and of the defendant Probert are perfect and equal. The legal title is in the plaintiff. Rights of ownership should not be lightly divested, encumbered, or impaired.

We find no sufficient evidence in the record from which the rental value of the Probert tract, excluding improvements, can be determined. The complaint does not seek *mesne* profits on account of the wrongful occupancy of the defendant and none will be allowed.

The case is reversed and remanded to the circuit court with directions to issue a mandatory injunction requiring the defendant Probert to remove the building from the property of the plaintiff within a reasonable time to be ascertained and fixed by the trial court, and to restore the land of the plaintiff to its former condition as near as reasonably may be.

Neither party will recover costs.